[No. C041404. Third Dist. Sept. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM IRA JONES, Defendant and Appellant.

COUNSEL

Victor S. Haltom for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, J. Robert Jibson and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—Charged with cultivating marijuana (Health & Saf. Code, § 11358), defendant William Ira Jones testified at a pretrial hearing under Evidence Code section 402 (hereafter section 402) that when he asked his physician whether he should try marijuana for his migraine headaches, his physician said, "It might help, go ahead." Despite this testimony, the trial court precluded defendant from presenting a defense under the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5; also known as Proposition 215) at trial because the court concluded there was "nothing to indicate that the doctor approved" defendant's marijuana use.

On appeal from an order granting probation after the trial court found him guilty of the cultivation charge, defendant contends the trial court erred in refusing to allow him to present his Compassionate Use Act defense to a jury. We agree in light of the fact that under our Supreme Court's decision in *People v. Mower* (2002) 28 Cal.4th 457, 481 [122 Cal.Rptr.2d 326, 49 P.3d 1067], a defendant need only raise a reasonable doubt whether he or she qualifies for the defense.

Under the Compassionate Use Act, the statute forbidding the cultivation of marijuana does "not apply to a patient . . . who . . . cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation *or approval* of a physician." (Health & Saf. Code, § 11362.5, subd. (d), italics added.) We conclude a physician gives his or her "approval" of a patient's marijuana use within the meaning of the Compassionate Use Act if the physician expresses to the patient a favorable opinion of marijuana use for treatment of the patient's illness. We further conclude that when a Compassionate Use Act defense is the subject of a pretrial hearing under Evidence Code section 402, the defendant need only produce evidence sufficient to raise a reasonable doubt on the element of the defense in question. Because defendant met that burden here on the question of whether he had a physician's approval to use marijuana, the trial court erred in precluding him from presenting his Compassionate Use Act defense to a jury. Accordingly, we will reverse the order granting probation.

## FACTUAL AND PROCEDURAL BACKGROUND

After law enforcement officers found a substantial number of marijuana plants growing in a shed on defendant's property, defendant was charged by amended information with one count of cultivating marijuana and one count of possessing marijuana for sale.

On the prosecution's motion, the court held a section 402 hearing before trial to determine whether defendant should be allowed to present evidence he cultivated the marijuana for his own medical use, as permitted by the Compassionate Use Act.[1] Defendant and his physician, Dr. Walter Morgan, testified at the hearing. Although Dr. Morgan's testimony was equivocal, defendant testified that when he asked the doctor if it would be okay if he tried marijuana for his migraine headaches, Dr. Morgan said, "It might help, go ahead." The court concluded the doctor's statement did not "rise to the level of a recommendation or approval" for the use of marijuana and therefore defendant could not put on a Compassionate Use Act defense. Defendant subsequently pled no contest based on assurances from the court he could appeal the ruling excluding his defense.

On appeal, we concluded defendant's no contest plea foreclosed any appellate review of the trial court's in limine ruling. (*People v. Jones* (May 8, 2001, C034877) [nonpub. opn.].) Because the plea was based, at least in part, on false assurances from the trial court, we reversed the judgment and remanded the case to the trial court to allow defendant to withdraw his plea. He did so, and the case was once again set for trial.

The new trial judge decided he was not bound by the first trial judge's ruling on the Compassionate Use Act defense and proceeded to consider the issue anew. The court first heard argument based on the testimony taken at the previous hearing. Later, however, the court became concerned about the quantity of marijuana plants defendant had possessed and how that bore on his Compassionate Use Act defense, and the court suggested the parties make a record if they could not agree on the quantity. The following day, several witnesses testified on the quantity issue. Following that testimony, and further argument, the trial court concluded defendant could not present his Compassionate Use Act defense to a jury because there was "nothing to indicate that the doctor approved" defendant's marijuana use and because the quantity defendant possessed did not bear any "rational relation to someone [who] has migraines three or four times a year."

---

[1] Defendant recognized the Compassionate Use Act does not apply to a charge of possession for sale.

In addition to foreclosing defendant's Compassionate Use Act defense, the court also ruled defendant could not present a mistake of fact defense based on his allegedly mistaken belief that he had his doctor's approval to use marijuana.

In light of the court's rulings, defendant agreed to submit the case to the court for decision on the police reports and the transcripts of the various hearings that had been held. Based on these materials, the court found defendant guilty of cultivating marijuana but not guilty of possessing marijuana for sale. The court also found true an arming enhancement allegation. The court concluded defendant was not eligible for sentencing under Proposition 36, but suspended imposition of judgment and placed defendant on probation for four years, with 30 days in jail, stayed pending appeal. Defendant appeals from the order granting probation.

## DISCUSSION

Defendant contends the trial court erred by refusing to allow him to present his Compassionate Use Act defense to a jury. We agree.

### I

#### *Physician Approval or Recommendation of Marijuana Use*

Although the trial court excluded evidence of defendant's Compassionate Use Act defense based on the supposed lack of any approval by defendant's physician for his use of marijuana *and* the quantity of marijuana defendant possessed,[2] the People attempt to defend the ruling on the first ground alone, arguing "[t]here is no substantial evidence that [defendant] had the approval of a physician to use marijuana." Accordingly, we likewise address only the "approval" issue.

We begin with the language of the Compassionate Use Act. One of the stated purposes of that law is "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity,

---

[2] Quantity is relevant to a Compassionate Use Act defense because the law authorizes the cultivation and possession of marijuana only "for the personal medical purposes of the patient." (Health & Saf. Code, § 11362.5, subd. (d).) If a person cultivates or possesses marijuana for any other purpose, the defense is not available. (See *People v. Mower, supra,* 28 Cal.4th at pp. 484–485 [jury question whether defendant possessed and cultivated 31 marijuana plants entirely for his own personal medical purposes].)

glaucoma, arthritis, *migraine*, or any other illness for which marijuana provides relief." (Health & Saf. Code, § 11362.5, subd. (b)(1)(A), italics added.) As relevant here, subdivision (d) of section 11362.5 of Health and Safety Code provides that "[s]ection 11358, relating to the cultivation of marijuana, shall not apply to a patient . . . who . . . cultivates marijuana for the personal medical purposes of the patient upon the written or oral *recommendation or approval* of a physician." (Italics added.)

In *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1548 [66 Cal.Rptr.2d 559], the court concluded the words "recommendation" and "approval" "mean something slightly different, and . . . 'approval' connotes a less formal act than a 'recommendation.' " We agree the two terms have different meanings, but the difference is not simply a matter of the degree of formality. To "recommend" something is "to present [it] as worthy of acceptance or trial." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 974.) To "approve" something is to "express a favorable opinion of" it. (*Id.* at p. 57.)

The word "recommendation," as used in the Compassionate Use Act, suggests the physician has raised the issue of marijuana use and presented it to the patient as a treatment that would benefit the patient's health by providing relief from an illness. The word "approval," on the other hand, suggests the patient has raised the issue of marijuana use, and the physician has expressed a favorable opinion of marijuana use as a treatment for the patient. Thus, a physician could *approve* of a patient's suggested use of marijuana without ever *recommending* its use.

At the first section 402 hearing in this case, Dr. Morgan was adamant that he never *recommended* defendant use marijuana for his migraine headaches. Defendant also admitted Dr. Morgan did not recommend he use marijuana. There was evidence, however, that Dr. Morgan expressed *a favorable opinion* of defendant's use of marijuana, which would constitute an "approval" under the Compassionate Use Act.

On this point, Dr. Morgan's testimony was equivocal at best. Dr. Morgan recalled seeing defendant about his migraine headaches around September 1997, and he recalled discussing marijuana as a treatment for those headaches. According to Dr. Morgan, defendant "mentioned that he had used [marijuana] for his migraine headaches" and "that he found it helpful." When asked whether he approved of or recommended defendant's marijuana use, Dr. Morgan said: "I don't really recall what I would have said to him at that time, [ex]cept what I probably generally would have said. I really don't remember the language that I used for him." When asked how he "generally . . . might have responded" to defendant's mention of marijuana, Dr. Morgan said: "My general approach is, if it works on something that's difficult, I support it. But I'm sure in this case I would not have recommended it

specifically because of its controversial legal status." Dr. Morgan then admitted he felt he "would be in trouble for prosecution if [he] would have at that time recommended or approved [defendant's] marijuana use."[3]

On cross-examination, when asked whether he had approved defendant's use of marijuana, either orally or in writing, Dr. Morgan responded: "Certainly not in writing. I don't believe I would have used such words as, 'Keep using it,' or, 'It is okay to continue doing that.' I don't think I would have used those kinds of words." Dr. Morgan went on to testify that it "would be more likely" that he did not respond at all to defendant's assertion of marijuana use. Later, while examining Dr. Morgan on defendant's medical records, the prosecutor approached the issue again, asking: "So I know you're a little fuzzy on the details, but would the absence of [any mention of marijuana] in the medical record for that date indicate to you that you did not approve the defendant's use of marijuana?" Dr. Morgan cryptically responded: "I certainly did not recommend it. I did not approve it. I did verbally approve it, and I certainly did not recommend it." When asked whether he "affirmatively approve[d defendant's] use of marijuana," Dr. Morgan said: "I don't believe I would have done that."

In contrast to Dr. Morgan's equivocal testimony as to whether he had expressed his approval of defendant's use of marijuana, defendant was adamant that Dr. Morgan *had* expressed a favorable opinion of his marijuana use. Defendant testified that when he went to see Dr. Morgan, he had "never used marijuana in [his] life." He claimed to have read on the Internet that marijuana helped migraine headaches, so he asked Dr. Morgan "if it would be okay if I tried it, and [Dr. Morgan] said, 'It might help, go ahead.'" Defendant went on to testify that he and Dr. Morgan "had quite a bit of discussion on it, and [Dr. Morgan] seemed to be awful afraid of the legal problem." According to defendant, Dr. Morgan said "he didn't want to put it in writing," and although he did not use the word "approve," he did say "If it helps, use it." Defendant took this to be an approval.

---

[3] At least as far as state law is concerned, Dr. Morgan's fear was unjustified, because the Compassionate Use Act provides that "[n]otwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes." (Health & Saf. Code, § 11362.5, subd. (c).) While this provision does not expressly confer immunity for having "approved" marijuana, we do not deem the omission of the word "approved" from this provision of any significance in determining the meaning of the term "approval" in subdivision (d) of Health and Safety Code section 11362.5.

## II

### *The Burden of Proof on Defendant*

Having surveyed the relevant evidence from the section 402 hearing, we turn to the central question: Did the trial court err in excluding defendant's Compassionate Use Act defense based on this evidence because, as the trial court saw it, there was "nothing to indicate that the doctor approved" defendant's marijuana use? The answer to that question turns on the proper standards to be applied in a section 402 hearing on a Compassionate Use Act defense.

At a section 402 hearing, "[t]he proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when: [¶] (1) The relevance of the proffered evidence depends on the existence of the preliminary fact . . . ." (Evid. Code, § 403, subd. (a).)

Here, the "proffered evidence" was the evidence of defendant's Compassionate Use Act defense as a whole. The "preliminary fact" was the element of the defense the People were challenging, namely, whether defendant had the approval of a physician to use marijuana for his migraine headaches. (See Evid. Code, §§ 400, 401 [defining "preliminary fact" and "proffered evidence"]; *People v. Galambos* (2002) 104 Cal.App.4th 1147, 1156 [128 Cal.Rptr.2d 844] [explaining that an element of an affirmative defense is a "preliminary fact" "upon which depends the admission of the evidence comprising the entire defense"].) ■ The relevance of the Compassionate Use Act defense as a whole depended on the existence of the physician's approval. Therefore, as the proponent of the defense, defendant bore "the burden of producing evidence as to the existence of the" approval, and the evidence of the defense as a whole was inadmissible unless defendant produced sufficient evidence to sustain a finding of the existence of the approval.

In determining whether the evidence was sufficient to sustain a finding that Dr. Morgan approved of defendant's marijuana use, it is critical to consider the burden of proof imposed on a defendant who asserts a Compassionate Use Act defense. ■ As our Supreme Court recently explained in *People v. Mower, supra*, 28 Cal.4th at page 481 (which was decided three months after the second section 402 hearing in this case), "as to the facts underlying the defense provided by [the Compassionate Use Act], defendant is required merely to raise a reasonable doubt." Thus, at trial a defendant asserting a

Compassionate Use Act defense need not persuade the jury by a preponderance of the evidence that he had a physician's approval to use marijuana. Instead, he need only raise a reasonable doubt as to whether he had such an approval.

There is some authority for the proposition that "the correct standard of proof for a preliminary fact under Evidence Code section 403 is evidence sufficient to support a finding by a preponderance of the evidence." (*People v. Herrera* (2000) 83 Cal.App.4th 46, 61 [98 Cal.Rptr.2d 911].) That cannot be true, however, when (as here) a burden of proof less onerous than preponderance of the evidence applies at trial. ■ If, to prevail at trial, the defendant is required only to raise a reasonable doubt as to whether he had a physician's approval to use marijuana, then no greater burden can be imposed on the defendant at a pretrial section 402 hearing called to challenge his Compassionate Use Act defense. If the defendant produces evidence at the section 402 hearing sufficient to raise a reasonable doubt as to whether he had a physician's approval to use marijuana, then the gatekeeping function of a section 402 hearing is satisfied and the defense should go to the jury to decide. Only if the defendant fails to produce sufficient evidence to raise a reasonable doubt about the existence of an approval is the trial court justified in keeping the matter from the jury. (See *People v. Lucas* (1995) 12 Cal.4th 415, 467 [48 Cal.Rptr.2d 525, 907 P.2d 373] [" '[T]he judge's function on questions of this sort is merely to determine whether there is evidence sufficient to permit a jury to decide the question' "].)

Here, we conclude the evidence was sufficient to raise a reasonable doubt as to whether Dr. Morgan approved defendant's use of marijuana for his migraine headaches.[4] If the jury credited defendant's testimony that Dr. Morgan told him marijuana use " 'might help, go ahead,' " the jury could find defendant had Dr. Morgan's "approval" because Dr. Morgan expressed a favorable opinion of defendant's proposed marijuana use. Because defendant's testimony was sufficient to raise a reasonable doubt over the fact of the physician's approval, the trial court erred in barring defendant from presenting his Compassionate Use Act defense to the jury.

■ That Dr. Morgan himself did not admit to having approved of defendant's marijuana use is of no matter. His testimony was equivocal enough on the point that the jury could have believed him and still found he gave his verbal approval of defendant's marijuana use, as defendant claimed. In any event, even if Dr. Morgan had adamantly denied approving defendant's marijuana use, it would not have mattered for purposes of the section

---

[4] It is not clear from the record what burden of proof—preponderance of the evidence or evidence sufficient to raise a reasonable doubt—the trial court applied at the second section 402 hearing.

402 hearing. Because the Compassionate Use Act defense was ultimately a question for the jury, it was not for the trial court to decide whether Dr. Morgan was more credible than defendant. The trial court's role was simply to decide whether there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt as to whether Dr. Morgan approved defendant's marijuana use. Defendant's testimony constituted such evidence. Thus, defendant should have been allowed to present his Compassionate Use Act defense to the jury, and the trial court erred in granting the prosecution's motion to exclude that defense.[5]

DISPOSITION

The order granting probation is reversed.

Blease, Acting P. J., concurred.

**KOLKEY, J.,** Concurring and Dissenting.—I agree that defendant's conviction must be reversed: Under the standard established by the California Supreme Court in *People v. Mower* (2002) 28 Cal.4th 457, 481 [122 Cal.Rptr.2d 326, 49 P.3d 1067], defendant's proffered evidence that his physician told him to "go ahead" and try marijuana for his migraine headaches raises a reasonable doubt whether he had a physician's approval for purposes of the Compassionate Use Act of 1996 (Compassionate Use Act; Health & Saf. Code, § 11362.5).[1]

But I disagree with the majority's construction of the term "approval" under the Compassionate Use Act. The majority concludes that "a physician gives his or her 'approval' of a patient's marijuana use within the meaning of the Compassionate Use Act if the physician expresses to the patient a favorable opinion of marijuana use for treatment of the patient's illness." (Maj. opn. *ante,* at p. 344.)

However, the dictionary offers several definitions for the word "approval." The definition of "approval" as a mere "favorable opinion" takes the broadest and loosest construction of the term, stretches the concept of "approval" beyond the purposes of the Compassionate Use Act, and will promote needless litigation over whether a physician's innocent remarks short of a prescription for treatment constitute approval.

---

[5] Because we conclude the order granting probation must be reversed on this basis, we do not reach defendant's alternate arguments that the trial court erred in precluding him from presenting a mistake of fact defense or that he was eligible for sentencing under Proposition 36.

[1] Further statutory references are to the Health and Safety Code.

## I.

When interpreting a statute adopted by initiative, like the Compassionate Use Act, " '[a]bsent ambiguity, we presume that the voters intend the meaning apparent on the face of [the] initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Of course, in construing the statute, '[t]he words . . . must be read in context, considering the nature and purpose of the statutory enactment.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042] (*Lungren*); see *Consumer Advocacy Group, Inc. v. Exxon Mobil Corp.* (2002) 104 Cal.App.4th 438, 443–444 [128 Cal.Rptr.2d 454] (*Consumer Advocacy*).)

In this case, section 11362.5, subdivision (d)—the principal provision of the Compassionate Use Act—provides that California's criminal prohibitions against the possession and cultivation of marijuana do not apply to a patient, or the patient's caregiver, who possesses or cultivates marijuana for the patient's personal medical purposes "upon the written or oral recommendation or approval of a physician."

The statute thus links the terms "recommendation" and "approval" in the context of a physician's authorization of the medical use of marijuana. However, the statute nowhere defines those terms.

When a term or phrase is not defined in a statutory initiative, "it can be assumed to refer not to any special term of art, but rather to a meaning that would be commonly understood by the electorate." (*Lungren, supra,* 14 Cal.4th at p. 302; *Consumer Advocacy, supra,* 104 Cal.App.4th at p. 444.) "To determine the common meaning, a court typically looks to dictionaries." (*Consumer Advocacy, supra,* 104 Cal.App.4th at p. 444, citing *Lungren, supra,* 14 Cal.4th at p. 302.)

The dictionary reveals that "approval" has a number of definitions. The meaning of "approval" adopted by the majority is based on the broadest definition of the word "approve," i.e., "to have or express a favorable opinion of." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 57.)

But the same dictionary also defines "approve" as meaning "to give formal or official sanction to . . . ." (Merriam-Webster's Collegiate Dict., *supra,* at p. 57.) So do other dictionaries. (See American Heritage Dict. (3d ed. 1992) p. 91 [defining "approve," inter alia, as "[t]o consent to officially or formally; confirm or sanction"].)

"Sanction," in turn, means "explicit or official approval, permission, or ratification: APPROBATION." (Merriam-Webster's Collegiate Dict., *supra,*

p. 1031; see American Heritage Dict., *supra,* p. 1596 ["sanction" defined as "[a]uthoritative permission or approval that makes a course of action valid"].)

In the context of the requirement of a *physician's approval* of the personal medical use of an otherwise illegal drug, the definition of "approval" as a "formal or official sanction" to use such a drug better serves the purpose of the Compassionate Use Act than the expression of "a favorable opinion" posited by the majority. (Maj. opn. *ante,* at p. 344.)

First, " ' "where a word of common usage has more than one meaning, the one which will best attain the purposes of the statute should be adopted . . . ." ' " (*Sierra Club v. City of Hayward* (1981) 28 Cal.3d 840, 860, fn. 12 [171 Cal.Rptr. 619, 623 P.2d 180]; *People v. Quesada* (1991) 230 Cal.App.3d 525, 535 [281 Cal.Rptr. 426].)

In this case, the stated purpose of the Compassionate Use Act, as set forth in section 11362.5, subdivision (b)(1)(A), is "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use *is deemed appropriate* and *has been recommended* by a physician *who has determined* that the person's health would benefit from the use of marijuana in the treatment of [various conditions and illnesses] for which marijuana provides relief." (Italics added.)

Thus, the express explanation of the statute's purpose suggests that a physician must assess the *appropriateness* of marijuana as a medical treatment, *determine* that the patient's health would benefit from its use, *and then recommend it,* before the statute permits legal possession or cultivation of marijuana. In short, the statutory language demonstrates that the voters intended that a *process* occur, whereby doctors give a formal sanction to the use of marijuana on an individualized basis to bona fide patients. (Cf. *Conant v. McCaffrey* (N.D.Cal. 1997) 172 F.R.D. 681, 686.) This deliberative process, as expressed in the statutory purpose, necessarily protects the patient *and* also acts as a bright line in granting limited immunity for the otherwise unlawful marijuana possession or cultivation. Indeed, the ballot arguments separately reveal that the physician's authorization was meant to act as a bright line and to prevent nonmedical use. (See pt. II, *post.*)

In contradistinction, the mere expression of a favorable opinion of marijuana use suggests less deliberation, less formality, and less finality than a recommendation or other official sanction of the use of marijuana as a treatment.

Second, elsewhere in the Compassionate Use Act, the statute only refers to "recommendation" (§ 11362.5, subds. (b)(1)(A) & (B), (c)), not "approval,"

thereby suggesting that approval may be distinct from recommendation but has an equivalence in weight and purpose. For instance, as noted, the statute states that its purpose is "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been *recommended* by a physician . . . ." (§ 11362.5, subd. (b)(1)(A), italics added.) Likewise, it states that an additional purpose is "[t]o ensure that patients . . . who obtain and use marijuana for medical purposes upon the *recommendation* of a physician are not subject to criminal prosecution or sanction." (§ 11362.5, subd. (b)(1)(B), italics added.) And finally, it provides that "no physician . . . shall be punished, or denied any right or privilege, for having *recommended* marijuana to a patient for medical purposes." (§ 11362.5, subd. (c), italics added.)

Thus, unless we read "approval" to connote the same weight and purpose as a physician's "recommendation," the statute would protect physicians from punishment only in the case of an authorization that rises to the level of a recommendation of marijuana use, but not in the case of an approval, because section 11362.5, subdivision (c), only provides that a physician shall not be punished "for having recommended marijuana to a patient for medical purposes." Accordingly, while there is no need today to construe the scope of section 11362.5, subdivision (c), the exclusive use of the term "recommendation" in that subdivision and in the subdivision setting forth the statutory purposes suggests that the term "approval," while distinct from "recommendation," must have a similar formality and gravity. Otherwise, its anomalous introduction into the provision granting limited immunity to patients from prosecution for the possession or cultivation of marijuana (§ 11362.5, subd. (d)) would stray from the otherwise consistent statutory provisions that focus only on the physician's recommendation.

Third, the rule of statutory construction, *noscitur a sociis*—that "a word takes meaning from the company it keeps"—supports a definition of "approval" that affords the same level of formality and gravity as "recommendation." (*People v. Drennan* (2000) 84 Cal.App.4th 1349, 1355 [101 Cal.Rptr.2d 584] (*Drennan*).) Under that canon of construction, " '[a] word of uncertain meaning may be known from its associates and its meaning "enlarged or restrained by reference to the object of the whole clause in which it is used." [Citation.]' [Citation.]" (*Ibid.*; see also *Lungren, supra,* 14 Cal.4th at p. 307.) Applying this canon, the tandem statutory references to "recommendation" and "approval" in the context of a physician's authorization indicate that both are meant to provide the same level of formality and gravity in connection

with the statute's objective of authorizing marijuana use.[2] Only the definition of "approval" as a formal or official sanction gives it the same formality and gravity as a physician's recommendation.

Indeed, the majority's conclusion that "recommendation" suggests that "the physician has raised the issue of marijuana use and presented it to the patient as a treatment" (maj. opn. *ante*, at p. 347), whereas "approval" suggests that "the patient has raised the issue of marijuana use" (*ibid.*), distinguishes the two terms while maintaining the same level of formality and gravity. However, the majority's additional definition of "approval" as the expression of "a favorable opinion" (*ibid.*) does not.

For these reasons, as a matter of construction of the statutory language of the Compassionate Use Act, physician "approval" should have the same level of formality and gravity as "recommendation" and should be defined as the physician's formal or official sanction of a patient's use of marijuana as a medical treatment after the patient has raised the subject.

## II.

Conversely, interpreting "approval" as a mere "favorable opinion" threatens to stretch the concept of physician approval of marijuana use beyond what the voters authorized when they approved the Compassionate Use Act.

To resolve ambiguities in a statutory initiative, " 'it is appropriate to consider indicia of the voters' intent other than the language of a provision itself. [Citation.]' [Citation.] Such indicia include the analysis and arguments contained in the official ballot pamphlet." (*Legislature v. Eu* (1991) 54 Cal.3d 492, 504 [286 Cal.Rptr. 283, 816 P.2d 1309].)

The ballot pamphlet arguments for Proposition 215, pursuant to which the Compassionate Use Act was enacted, assured voters that the physician's role in the process would avoid the risk that the initiative would create a giant loophole in the state's drug laws because: (1) "Proposition 215 will allow seriously and terminally ill patients to legally use marijuana, if, and only if, they have the approval of a licensed physician" (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) argument in favor of Prop. 215, p. 60); (2) "Proposition 215 would also protect patients from criminal penalties for marijuana, but ONLY if they have a doctor's recommendation for its use" (*ibid.*); (3) "Proposition

---

[2] *People v. Trippet* (1997) 56 Cal.App.4th 1532 [66 Cal.Rptr.2d 559], contrarily suggests that " 'approval' connotes a less formal act than a 'recommendation.' " (*Id.* at p. 1548.) However, the court in Trippet offered no authority or analysis for this conclusion, which was dictum.

215 DOES NOT permit non-medical use of marijuana" (*ibid.*); (4) "Proposition 215 does not allow 'unlimited quantities of marijuana to be grown anywhere'" (*id.*, rebuttal to argument against Prop. 215, p. 61); and (5) "Proposition 215 simply gives those arrested a defense in court, *if they can prove they used marijuana with a doctor's approval*" (*ibid.*).

First, these ballot arguments by the proponents show that physician "approval" was used interchangeably with "recommendation." One term was not considered less formal, clear, or deliberative than the other.

Second, these ballot pamphlet arguments confirm the voters' intention that under the terms of the Compassionate Use Act, "[t]he state relies on the recommendation [or approval] of a state-licensed physician to define the line between legal and illegal marijuana use." (*Conant v. Walters* (9th Cir. 2002) 309 F.3d 629, 645 (conc. opn. of Kozinski, J.).)

But a broad interpretation of "approval of a physician" to mean a "favorable opinion" threatens to blur the line between legal and illegal marijuana use by watering down the role of the gatekeeper intended to draw that line. Whereas "[t]he purpose of [Proposition 215] was to provide a narrow medical exception under medical supervision for use of marijuana as an approved therapeutic agent" (*People v. Rigo* (1999) 69 Cal.App.4th 409, 415 [81 Cal.Rptr.2d 624]), the right to use marijuana based merely upon a physician's "favorable opinion" toward such a treatment suggests neither the deliberation nor the formal sanction associated with a physician's recommendation or approval of a particular treatment for a particular patient.

### III.

Finally, defining approval as the mere expression of a "favorable opinion" of marijuana use will promote litigation over innocent remarks made during the course of a patient-physician consultation, because such a definition is too vague, too loose, and too easily attributable to innocent or stray comments not intended as the final word.

For instance, in the course of a consultation, a physician may express a number of opinions to the patient, but then ultimately recommend or approve a specific treatment as the best treatment option. The fact that the doctor may have a favorable opinion of several courses of action does not make that opinion a recommendation or an official sanction of a particular treatment, which is instead the *outcome* of the give-and-take between doctor and patient.

The situation is somewhat analogous to a client's consultation with a lawyer, who might express a range of opinions, more or less favorable, about

possible legal strategies. But it is the lawyer's recommendation or approval of one action over another at the conclusion of the consultation that is counsel's final word.

Yet, under the majority's definition, the expression of an opinion during the course of a consultation can be cited as an approval, despite the physician's different conclusion.

This will encourage litigation over whether a physician's passing remarks, unintended or misapprehended, constituted an approval. Significantly, such passing remarks will not be likely documented in the medical record. And the physician will often not recall comments made during the consultation, but only the ultimate recommendation or approval of a particular treatment. This will leave the patient—the potential *defendant*—as the principal witness of the *physician's* intentions, undermining the role of the very gatekeeper whom the Act established to assure legitimate marijuana use. And the fact finder— judge or jury—will not have the benefit of clear testimonial or documentary evidence from the gatekeeper—the physician—assigned the role under the Compassionate Use Act of determining whether marijuana use falls within the protection of the statute.

Such an uncertain situation does not further the statute's objective, under-mines the physician's role of gatekeeper established by the statutory scheme, adds expense and time to the judicial determination whether the Compassion-ate Use Act is properly invoked, and goes well beyond what the electorate understood the measure would accomplish, i.e., a narrow exception to this state's criminal prohibitions against marijuana possession and cultivation where a physician has formally authorized marijuana use as a medical treatment for a particular patient's illness or ailment.

Accordingly, in the context of the Compassionate Use Act's requirement of a physician's recommendation or approval of the medical use of an otherwise illegal substance, the definition of "approval" should require the physician's formal or official sanction of the patient's use of marijuana as the appropriate medical treatment. The majority's differing definition that the physician's mere expression of "a favorable opinion of marijuana use as a treatment" can constitute the requisite approval (maj. opn. *ante,* at p. 347) lacks the formality, deliberation, or gravity of the authorization suggested by both the statutory language and the ballot materials that persuaded the electorate to approve enactment of the Act in the first place.