Filed 6/28/16  P. v. Gotfried CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>FREDRIC JACOB GOTFRIED,<br><br>　　　　Defendant and Appellant. | C076867<br><br>(Super. Ct. No. 12F8602) |

A jury convicted defendant Frederic Jacob Gotfried of threatening a public officer (Pen. Code, § 71)[1] and obstructing or resisting an executive officer (§ 69).  The jury acquitted defendant on charges of possession of marijuana for sale, possession of more than 28.5 grams of marijuana, and attempted sale or transportation of marijuana.  (Health & Saf. Code, §§ 11359, 11357c, 664/11360, subd. (a).)  The trial court suspended

---

[1]    Undesignated statutory references are to the Penal Code.

imposition of sentence and granted defendant probation for a period of three years with various conditions imposed.

On appeal, defendant contends (1) the trial court erred by refusing to instruct the jury on trespass by the sheriff's deputy who was threatened by defendant, (2) insufficient evidence supports his convictions, and (3) we must review the sealed transcript of the hearing conducted by the trial court pursuant to his *Pitchess* motion.[2]

We conclude the trial court correctly refused to instruct on trespass because both of defendant's convictions were based on threats and trespass was not a valid defense to charges involving threatening a peace officer carrying out his or her lawful duties. We reject defendant's substantial evidence claim based on the testimony that defendant brandished a gun and threatened to shoot a deputy sheriff who was conducting a criminal investigation. Having reviewed the sealed transcript of the *Pitchess* hearing, we conclude the trial court did not abuse its discretion in finding there was no evidence that needed to be disclosed. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

Because defendant's appeal challenges only his convictions of threatening a public officer and obstructing or resisting an executive officer, we recount the facts germane to these offenses.

***Prosecution Evidence***

On May 31, 2012, Shasta County Sheriff's Department Deputy Thomas Barner accompanied county code enforcement officers as they went onto defendant's property to investigate whether defendant was in compliance with county codes regarding the cultivation of marijuana. Deputy Barner was dressed in his sheriff's deputy uniform and

---

[2]     See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2

announced his presence as a sheriff's deputy. Deputy Barner went through an open gate in a large fence on the north side of defendant's property. Deputy Barner testified he "explained very clearly to [defendant] that he was in violation of [the county] code and also criminal [statutes]" for his cultivation of marijuana. Deputy Barner also informed defendant he "would be coming back."

Over the next few months, Deputy Barner made at least 10 over-flights in a helicopter and observed the same amount of marijuana was growing on defendant's property.

On December 3, 2012, Deputy Barner returned to defendant's property to conduct further investigation of defendant's marijuana cultivation. As Deputy Barner arrived, he saw defendant standing outside his gate and speaking with someone in a truck. Deputy Barner called out to defendant, "Fred, I'm just here to take pictures for the District Attorney's Office. It will take only a few minutes and then I'll be leaving." Defendant looked up, saw Deputy Barner, and "immediately, as fast as he could walk, walked to the gate and slammed the gate." From inside the property, defendant said: "I know who you are. You're trespassing. Get off my property." Deputy Barner identified himself as a sheriff's deputy and explained he was there at the request of the district attorney's office to take photographs. Defendant was agitated and angry.

Defendant turned off a generator inside his property. Deputy Barner repeated himself, stating he "just wanted to take pictures and [he'd] be gone." Defendant responded, "You're trespassing. If you come onto my property, I will shoot you." Deputy Barner walked along the fence, trying to keep track of defendant. Defendant may have repeated his threat to shoot Deputy Barner if he came onto defendant's property.

3

Defendant went into a tent. Approximately 30 seconds later defendant emerged with a "long gun" that was either a rifle or a shotgun. Deputy Barner again repeated he was there at the request of the district attorney's office to take photographs. Defendant responded by reiterating his threat to shoot if the deputy came onto the property.

Deputy Barner became concerned for the safety of two unarmed civilians in the area. He announced, "Fred, I'm leaving." Defendant answered, "Leave and don't come back." Deputy Barner left without having entered defendant's property.

### Defense Evidence

Defendant testified on his own behalf as follows: He had not expected Deputy Barner to return to his property on December 3, 2012. When defendant heard the deputy "say something about pictures for the DA," defendant responded: "I really don't care who you are. You're trespassing. You need to go away." Defendant turned off his generator, went into a tent on his property, and tried to contact his attorney. He heard a loud sound that seemed like someone was jumping on a large piece of tin. Not being able to see out of the tent, defendant called out: "I have a gun." He did not see Deputy Barner. After finishing an e-mail to his attorney, defendant left the tent while carrying his gun.

Defendant testified Deputy Barner did not request permission to come onto the property. Defendant said he had a gun because he "was not sure who was back there."

## DISCUSSION

## I

### *Trial Court's Refusal to Instruct the Jury on Trespass*

Defendant contends the trial court committed reversible error by refusing his two instructions concerning trespass. Proposed defense instruction number two stated: "When an individual intentionally enters the property owned or occupied by another, without the owner/occupier's permission, he/she is trespassing." Proposed defense instruction number three stated: "The duties of a deputy sheriff do not include trespassing." Defendant asserts the jury should have been "told that if [his] actions were only intended to deter Deputy Barner from trespassing on his property, that his actions were legal or, at least, did not violate . . . sections 69 and 71." We reject the argument because there is no defense of trespass to charges involving threatening a peace officer carrying out his or her lawful police duties.

### A.

### *Duty to Instruct*

It is well settled a trial court has a sua sponte duty to instruct the jury on a defense when supported by substantial evidence and not inconsistent with the defendant's theory of the case. (*People v. Salas* (2006) 37 Cal.4th 967, 982.) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.' " (*Ibid*., quoting *People v. Jones* (2003) 112 Cal.App.4th 341, 351.) However, a trial court has no duty to instruct the jury on an inapplicable defense. (*People v. Jennings* (2010) 50 Cal.4th 616, 668.)

5

**B.**

*Defense of Property*

In essence, defendant contends he was deprived of a defense because the jury was not informed about the implications of trespass by Deputy Barner. Defendant's contention rests on the mistaken assumption that defense of property constitutes a lawful excuse to charges of threatening a peace officer.

An owner or occupant of real property, after fair warning to a trespasser, may use reasonable force to eject the trespasser when it appears there is imminent danger to property or to persons on the property. (Civ. Code, § 50 [providing that "[a]ny necessary force may be used to protect from wrongful injury the . . . property of oneself"]; *People v. Corlett* (1944) 67 Cal.App.2d 33, 53, disapproved on other grounds in *People v. Carmen* (1951) 36 Cal.2d 768, 775–776.) However, the limited right to defend one's property against resistant trespassers does not excuse threats against law enforcement officers in the lawful discharge of their duties. (*People v. Hupp* (1943) 61 Cal.App.2d 447, 450 (*Hupp*).)

In *Hupp*, the appellate court considered a challenge to a conviction for assault with a deadly weapon against police officers who went to the defendant's house to investigate a reported disturbance. (61 Cal.App.2d at p. 449.) The police officers learned of the reported disturbance from their supervisor who ordered them to investigate. (*Id.* at p. 450.) At that point, "[i]t became their duty to do so as it is the duty of peace officers not only to make arrests for the commission of crime but to prevent the commission of additional crimes and protect the lives of citizens. Under these instructions they proceeded to defendant's residence, not necessarily to arrest him, but to investigate and act on the results of such investigation. One of the officers walked up the steps to the porch where he was met by defendant, armed with a loaded shotgun, who threatened the

officer's life. One officer had seen defendant drunk, quarrelsome, and trying to engage in a fight a short time earlier. They saw defendant's wife crawling under the house with a child in her arms. They had been told by responsible authority that defendant was armed and had threatened his son–in–law. Under such circumstances the officers did nothing but their duty and showed creditable restraint in performing it. The argument that they were trespassers and that defendant could resist the trespass by any means short of homicide is entirely without merit." (*Id.* at p. 450.)

In sum, trespass is not a defense against charges involving threatening to shoot law enforcement officers engaged in the performance of their duties. (*Hupp*, *supra*, 61 Cal.App.2d at pp. 449-450.) Thus, defendant was not entitled to jury instructions that would have excused his threats to shoot Deputy Barner on grounds he was defending his real property against trespass.

## II

### *Sufficiency of the Evidence*

Defendant contends insufficient evidence supports his convictions of threatening a public officer and obstructing or resisting an executive officer. We reject the contention.

In reviewing whether the evidence suffices to support a criminal conviction, we assess " 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 576, quoting *People v. Reilly* (1970) 3 Cal.3d 421, 425.)

7

In arguing insufficiency of the evidence, defendant properly acknowledges the jury was entitled to credit Deputy Barner's testimony. Our review of Deputy Barner's testimony reveals ample evidence to support defendant's convictions. This testimony established Deputy Barner was conducting an investigation of defendant's marijuana cultivation at the request of the district attorney's office. Moreover, defendant's statements indicated he knew Deputy Barner was acting in his capacity as a sheriff's deputy. Two or three times, defendant threatened to shoot Deputy Barner and brandished a firearm. Based on this testimony, we conclude there was sufficient evidence to support defendant's convictions of threatening a public officer and obstructing or resisting an executive officer.

Defendant argues that "the evidence clearly demonstrated that [defendant] sought to deter Barner from performing a duty that was not, in fact, imposed upon him by law." He further argues that "[i]n order to convict [him], the district attorney had to prove, beyond a reasonable doubt that [defendant] did not merely intend to deter the trespassing itself but instead, intended to deter . . . Barner's investigation in general including those portions of the investigation which were legal."

Section 69 "prohibits the use of threats of violence to attempt to deter or prevent an officer from performing any duty imposed by law." (*In re Manuel G.* (1997) 16 Cal.4th 805, 816 (*Manuel G.*).) Section 69 is subject to "California's longstanding rule that a defendant cannot be convicted of an offense against a peace officer engaged in the performance of his or her duties unless the officer was acting lawfully at the time of the offense." (*Id.* at p. 818.) Section 71 is intended "to prevent threatening communications to public officers or employees designed to extort their action or inaction" and requires a threat directly communicated to a public officer or employee to inflict unlawful injury coupled with an apparent ability to carry out the threat. (*In re Ernesto H.* (2004) 125

8

Cal.App.4th 298, 308.) Section 71 focuses on defendant's "intent to influence the performance of the officer or employee's *official duties*." (*Ernesto H.*, *supra*, at p. 308, italics added.)

In resolving defendant's argument about the lawfulness of Deputy Barner's duties, the decision in *Hupp* is instructive. There, the appellate court rejected an argument that police officers were trespassers because they were acting unlawfully -- having no right to arrest defendant in his house at night without a warrant. (*Hupp*, *supra*, 61 Cal.App.2d at p. 449.) The *Hupp* court explained that the police officers were not trespassing because it is the duty of peace officers not only to make arrests for the commission of crime but to prevent the commission of additional crimes and protect the lives of citizens." (*Id.* at p. 450.) Having acted on reports the defendant threatened his family while armed with a shotgun, the police officers in *Hupp* acted within their prerogative to investigate the reported crimes without being trespassers on the defendant's property. (*Ibid.*)

Criminal activity in California includes unlawful cultivation of marijuana (Health & Saf. Code, § 11358) and possession of marijuana with intent to sell (*id.*, § 11359). Additional related crimes include those with which defendant was actually charged, namely possession of more than 28.5 grams of marijuana, and attempted sale or transportation of marijuana. (Health & Saf. Code, §§ 11359, 11357c, 664/11360, subd. (a).) That defendant was acquitted of those offenses does not mean the charged conduct was not criminal. More important for our purposes, police officers have the prerogative to investigate such criminal activity. As the Supreme Court declared in *Manuel G.*, "Executive officers, *including peace officers investigating criminal activity*, must feel free to pursue their lawful duties without fear of violent retaliation." (*Manuel G.*, *supra*, 16 Cal.4th at p. 819, italics added.)

9

In this case, the sheriff's deputy was investigating a crime upon instruction by the district attorney's office. With such instruction, Deputy Barner had a duty to investigate possible crimes and code violations committed by defendant in his marijuana cultivation. (*Hupp*, *supra*, 61 Cal.App.2d at pp. 449-450.) Notably, Deputy Barner had previously observed defendant's marijuana cultivation was unlawful. Defendant's argument is based on his assertion he was "a legitimate medical marijuana user who was also legitimately growing medical marijuana for a relative." Crediting defendant's argument would mean anyone could threaten to shoot a peace officer conducting an investigation so long as the investigation does not yield a criminal conviction. We reject this untenable result.

We conclude the testimony that defendant brandished a gun and threatened to shoot a deputy sheriff who was conducting a criminal investigation constitutes sufficient evidence to support his convictions.

### III

### *Pitchess Motion*

Before trial, defendant filed a *Pitchess* motion to seek discovery of the law enforcement personnel file of Deputy Barner. The trial court conducted an in camera examination of the law enforcement personnel records of Deputy Barner. After the in camera examination, the trial court informed the parties the court "found nothing that the law requires me to disclose."

Defendant asks that we review the sealed record of the trial court's hearing on his *Pitchess* motion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229 [explaining appellate review properly encompasses the transcript of the trial court's in camera hearing on a *Pitchess* motion].) The People do not oppose the request.

10

We review a trial court's ruling on a *Pitchess* motion under the abuse of discretion standard of review. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.) Thus, we will not reverse unless the trial court's decision was arbitrary, capricious, or patently absurd. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) Having reviewed the sealed record, we conclude there was no procedural or substantive error in the trial court's handling of the *Pitchess* motion or in its ruling. (See *People v. Myles* (2012) 53 Cal.4th 1181, 1208–1209.)

## DISPOSITION

The judgment is affirmed.


　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　HOCH, J.



We concur:



　　　　　/s/
ROBIE, Acting P. J.



　　　　　/s/
MAURO, J.

11