[No. A080576. First Dist., Div. One. Jan. 21, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
SERGE RIGO, Defendant and Appellant.

410

**COUNSEL**

J. David Nick for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Gregg E. Zywicke, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARCHIANO, J.**—Serge Rigo was arrested for cultivation of marijuana the day before the effective date of the Compassionate Use Act of 1996

(Health & Saf. Code, § 11362.5).[1] Over three months later, Rigo obtained a doctor's approval on a written prescription form for medical use of marijuana. On stipulated facts, the superior court ruled that approval three months after the arrest did not bring the case within section 11362.5, and found Rigo guilty of cultivation of marijuana. We affirm.

## BACKGROUND

Appellant's home was searched on November 5, 1996. Officers found 4 marijuana branches hanging in the garage, 2 garbage bags containing marijuana cuttings, a brown bag containing 7.5 ounces of marijuana, and 4 white plastic bags of marijuana, containing 14 ounces, 13 ounces, 3 ounces, and slightly over a pound of marijuana. On November 13, 1996, appellant was charged with cultivation of marijuana and possession of marijuana for sale (§§ 11358, 11359). At the preliminary hearing, the court held appellant to answer on both counts. On May 13, 1997, the parties informed the court that they had reached an agreement whereby appellant would waive a jury trial, the district attorney would file an information charging only cultivation of marijuana, and the matter would be tried on stipulated facts. The evidence used at the trial consisted of portions of the preliminary hearing transcript.

Appellant's stipulated testimony established that he had suffered from gastritis since 1989. Over 10 years ago, while living in Switzerland, appellant learned about the use of marijuana to treat gastritis. Between 1989 and 1994, he saw four different doctors about his condition. In 1990 or 1991, appellant decided to self-medicate with marijuana and found it to be beneficial. In 1995, appellant decided to try growing his own marijuana to save money. The parties stipulated that appellant's use of marijuana was for medical purposes. Appellant was arrested and the marijuana was found at his home on November 5, 1996. Section 11362.5 was approved by the voters the same day and went into effect on November 6, 1996. (*People* v. *Trippet* (1997) 56 Cal.App.4th 1532, 1543 [66 Cal.Rptr.2d 559].) Three and a half months later, on February 17, 1997, Psychiatrist Tod Mikuriya reviewed appellant's records, found that he was suffering from chronic gastritis, that no conventional treatment relieved his condition, and that appellant's health had improved as a result of his use of marijuana, and provided an authorization for appellant to use marijuana for medical reasons.[2] Based on these facts, the issue submitted to the court was whether appellant was entitled to the protection of section 11362.5 notwithstanding the fact that the medical approval for his use of marijuana was obtained over three months after his

---

[1]All statutory references are to the Health and Safety Code.

[2]Dr. Mikuriya also testified for the defendant in *People* v. *Trippet, supra,* 56 Cal.App.4th at page 1537.

arrest. The trial court determined the issue adversely to appellant, found him guilty of cultivation of marijuana, and sentenced him to probation.

## DISCUSSION

On November 5, 1996, the voters approved Proposition 215, the Compassionate Use Act of 1996 (the Act). (§ 11362.5, subd. (a).) The statute provides that the purpose of the act is: "To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief." (§ 11362.5, subd. (b)(1)(A).) To carry out that purpose, subdivision (d) of the statute provides: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

In *People* v. *Trippet, supra,* 56 Cal.App.4th 1532, Division Two of this court determined that Proposition 215 "may be applied retroactively to provide, if its terms and the applicable facts permit, a defense to appellant." (56 Cal.App.4th at p. 1545.) ▮ Appellant herein argues that nothing in the statute specifies that a doctor's recommendation or approval must pre-date the cultivation or use of marijuana. He rests his argument on three points: (1) a footnote in *Trippet*; (2) the dictionary definition of the term "approve"; and (3) the purpose of section 11362.5. We find that none of these points support appellant's argument.

*The Footnote In Trippet Does Not Validate Approval After Arrest*

Appellant argues that *People* v. *Trippet, supra,* 56 Cal.App.4th 1532 acknowledged that the medical approval in that case was not prior to use, but held that the defendant was entitled to the compassionate use defense. This is not accurate. In dicta in a footnote, the court in *Trippet* disagreed with the Attorney General's contention that "approval" must be prior to possession, stating: "the statute does not so state or imply, nor do the dictionary definitions of 'approval.' Although prior approval will ordinarily be the case, having in mind the breadth of the term we can readily conceive of exigent circumstances in which the physician's approval might well be

contemporaneous with the possession, or even subsequent to the possession although prior to actual usage."[3] (*Id.* at p. 1548, fn. 13.)

Contrary to appellant's contention that *Trippet* involved a lack of prior approval, that court determined that the record was unclear whether or not a physician had approved the defendant's marijuana use and remanded the matter for factfinding on the issue. (56 Cal.App.4th at pp. 1548-1549.) In addition, the defendant had consulted with Dr. Mikuriya and had received a prescription for Marinol, a synthetic marijuana compound, for the defendant's migraine headaches. (*Id.* at p. 1539.) The record strongly indicated that the defendant believed she had prior approval of a physician because she told the trial court that Dr. Mikuriya had verbally recommended marijuana. (*Id.* at p. 1548.)

In the instant case, the stipulated facts establish that appellant not only had no prior medical approval or recommendation, but had not even consulted any doctor about his condition since 1994. He failed to seek approval until three and a half months after he was arrested and while his motion for pretrial diversion was pending. Appellant did not seek medical approval until the consequences of the justice system gave him the impetus to do so and did not do so in a reasonable amount of time for reasons independent of his arrest. Defendant's medical condition did not bring him to consult a doctor; rather the Twin Cities police officers did. There are no excuses, or "exigent circumstances" as mentioned in *Trippet*, to validate the approval or recommendation over three months after appellant's arrest. Regardless of whether we can conceive of exigent circumstances under which a contemporaneous or subsequent approval might allow application of the compassionate use defense, those circumstances do not exist in this case.[4]

Prior to appellant's arrest, reputable doctors were utilizing marijuana as an antiemetic, appetite stimulant and analgesic in specific situations. Tetrahydrocannabinol (THC), the primary intoxicating ingredient in marijuana also has been available in synthetic form as a pill, Marinol, approved by the Food

---

[3]The *Trippet* court noted that the words "approval" and "recommendation" have slightly different meanings, with "approval" connoting a less formal act. (56 Cal.App.4th at p. 1548.) The difference in meaning between the two terms makes no difference in our resolution of the issue in appellant's case.

[4]Appellant argues that section 11362.5 is not a defense, but an immunity, and therefore, a proper basis for quashing an indictment. We decline to address this issue, as it is not implicated in the disposition of the instant matter.

and Drug Administration, although some seriously ill patients report it is difficult to swallow when suffering extreme nausea.[5]

*Dictionary Definitions Do Not Establish a Post-arrest Defense*

Citing Webster's Encyclopedic Unabridged Dictionary, appellant argues that "approve" means "pronounce or consider agreeable or good" and does not connote that the approval must occur prior to the thing to be approved. However, the word approve in the context of this case also does not take on a meaning of subsequent approval. The syntax of "upon the approval" does not denote whether the approval may be subsequent to medicinal usage. There is a specific word for an approval that comes after an event, ratification. The word "ratify" is defined as follows: "To approve and sanction; to make valid; to confirm; to give sanction to. To authorize or otherwise approve, retroactively, an agreement or conduct either expressly or by implication." (Black's Law Dict. (6th ed. 1990) p. 1262, col. 1.) If ratification were intended, an appropriate word could have been used to denote that concept. Appellant's reliance on dictionary definitions does not support his construction of the statute.

*Prior Approval Is Consistent With the Language and Purpose of Section 11362.5*

We determine, under the facts of this case, that postarrest approval is insufficient to allow application of the compassionate use statute. Appellant argues that the Act applies retroactively, but that it was impossible to obtain authorization to cultivate marijuana prior to the effective date of the Act because physicians had no legal authority to recommend or approve the use of marijuana. As the Attorney General points out, the *Trippet* court accorded a broad meaning to the word "approve." It was possible, as shown in the facts of *Trippet,* for a physician to approve of medical uses of marijuana prior to the effective date of the Act. Appellant had not consulted with any doctor in the two years prior to his arrest. He admitted he was engaging in "self-medication" when he took the marijuana. Without explanation, he waited over three months after he was arrested to seek approval of his self-medicating activity. To allow self-medication in the context of this case would improperly promote nonmedically supervised use of marijuana for a variety of subjectively held reasons which would frustrate the intent of the voters in enacting Proposition 215. To sanction the use of marijuana under the facts presented herein would encourage the use of marijuana for any idiosyncratic problem, whether medically valid or not, with an ensuing

---

[5]See *NIH Panel Says More Study Is Needed to Assess Marijuana's Medicinal Use* (Mar. 19, 1997) 277 JAMA, 867, chronicling a variety of positive uses of marijuana under medical supervision.

attempt to seek medical approval after an arrest intervened.[6] Medical marijuana should be prescribed for specific relief for clearly defined medical problems.

One of the ballot arguments in favor of Proposition 215 informed the voters that it "will allow seriously and terminally ill patients to legally use marijuana, *if, and only if,* they have the approval of a licensed physician." Another section of the arguments stated: "Proposition 215 allows physicians to recommend marijuana in writing or verbally, . . . [and] would also protect patients from criminal penalties for marijuana, but ONLY if they have a doctor's recommendation for its use." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1996) p. 60, italics added, capitals in original.) The language in the ballot pamphlet emphasized that the purpose of the initiative was to help seriously ill patients who act pursuant to a doctor's recommendation or approval. ■ The acts of selling, giving away, transporting, and growing large quantities of marijuana remain criminal. (*People* ex rel. *Lungren* v. *Peron* (1997) 59 Cal.App.4th 1383, 1392-1393, 1400 [70 Cal.Rptr.2d 20].) ■ "Proposition 215 DOES NOT permit non-medical use of marijuana. Recreational use would still be against the law." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1996) p. 60.) There is no mention in the ballot arguments or the language of the statute about those who wish to self-medicate. The purpose of the proposition was to provide a narrow medical exception under medical supervision for use of marijuana as an approved therapeutic agent. There is also no mention about obtaining approval months after an arrest. The focus of the ballot arguments was that the statute would apply only in very limited situations. We decline appellant's invitation to extend the statutory language to postarrest ratification of self-medication. (*People* v. *Trippet, supra,* 56 Cal.App.4th 1532, 1546.) The compassionate use of marijuana within the meaning of the statute and circumstances of this case required a physician's approval for its use.

CONCLUSION

The judgment is affirmed.

Stein, Acting P. J., and Swager, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 21, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[6] The harmful physiological effects of marijuana have been widely documented. (See Lewis, Child and Adolescent Psychiatry (2d ed. 1996) pp. 748-749; Lezak, Neuropsychological Assessment (3d ed. 1995) pp. 258-259.)