[No. F042331. Fifth Dist. Aug. 2, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
NOEL CLARENCE SPARK, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of section II.

COUNSEL

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean and Mark A. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ARDAIZ, P. J.**—In June of 2002, a jury found appellant guilty of cultivating marijuana (Health & Saf. Code, § 11358).[1] His unsuccessful defense was based upon the Compassionate Use Act of 1996 (§ 11362.5), also known as Proposition 215, adopted by the California electorate as an initiative statute in November of 1996. Subdivision (d) of section 11362.5 states in pertinent part

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

that: ". . . Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." Appellant's jury was instructed with the 1999 revision of CALJIC No. 12.24.1, which stated in part that, "[t]he defendant has the burden of proving by a preponderance of the evidence all of the facts necessary to establish the elements of this defense . . . ." Then on July 18, 2002, before appellant was sentenced, the California Supreme Court decided *People v. Mower* (2002) 28 Cal.4th 457 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (*Mower*). In *Mower* the court expressly rejected the argument that a defendant must prove a compassionate use defense by a preponderance of the evidence. The *Mower* court stated, "we conclude that, as to the facts underlying the defense provided by section 11362.5(d), defendant is required merely to raise a reasonable doubt." (*Mower, supra,* at p. 481.) Appellant moved for and was granted a new trial.

At appellant's second trial he again raised a Compassionate Use Act defense, but again was found guilty of cultivating marijuana (§ 11358). This time appellant's jury was instructed that, "[t]he burden of proving the defense of compassionate use rests upon the defendant to raise a reasonable doubt as to the case against him." The jury was also instructed, however, that one of the "elements" of that defense was that "[t]he defendant was seriously ill." The court sentenced appellant to three years' probation subject to several conditions, including that he serve six months in the county jail.

On this appeal he raises three issues. He contends: (1) the jury was erroneously instructed on the defense of compassionate use; (2) the evidence was insufficient to support the verdict; and (3) the court erred in failing to sentence him under the diversion provisions of Proposition 36. As we shall explain, we agree with appellant's first contention and disagree with the second. Our conclusion that the jury was erroneously instructed requires reversal of the judgment and renders moot appellant's third contention. In the published portion of this opinion, we hold that the compassionate use defense of section 11362.5 does not require a defendant to present evidence that he or she was "seriously ill."

## FACTS

On October 10, 2001, the Kern County sheriff received an anonymous tip about marijuana growing in the backyard of Zelma Spark's trailer home in Inyokern. Two sheriff's deputies went to the home on the night of October 25 and saw a marijuana plant growing in the backyard area. The plant was about six feet tall.

The deputies went to the front door and contacted Ms. Spark. She told them her son, appellant Noel Spark, had been given permission to grow marijuana. The deputies searched the backyard and found two more marijuana plants. One of the plants was about three feet tall and was in full bloom; the other was a recently harvested stalk. The officers seized all three plants from the backyard. The plants belonged to Ms. Spark's son, appellant Noel Spark, who was living with his mother at the time.

The next day, appellant telephoned the police and said he had stayed in his mother's home for three or four weeks but now lived in San Bernardino County. He admitted the marijuana plants seized from his mother's home were his, and he said he took lengths to keep the plants hidden. He also said he smoked about a half-ounce of marijuana per week. Appellant claimed that he smoked marijuana for pain and that he had obtained a marijuana prescription from Dr. William Eidelman.

*Defense*

Appellant called to the stand Dr. William Eidelman. On May 8, 2001, appellant consulted Dr. Eidelman about medicinal marijuana. Appellant complained he had suffered from chronic back pain for about 10 years. Dr. Eidelman conducted an examination and determined appellant suffered from back pain. He gave appellant a letter approving the use of medicinal marijuana pursuant to Proposition 215. At trial, Dr. Eidelman opined appellant was in fact a seriously ill patient who qualified for medicinal marijuana to treat his pain.

On cross-examination, Dr. Eidelman acknowledged he was no longer licensed to practice medicine at the time of the trial. His license had been suspended for giving medicinal marijuana recommendations to four undercover police officers.

Dr. Eidelman also acknowledged that, when he examined appellant in May 2001, he did not review any of appellant's medical records before making his recommendation for marijuana use. The doctor used only his hands and his eyes when examining appellant. Dr. Eidelman's medical practice consisted only of himself—he had no receptionist or nurse. He did not accept insurance and usually only accepted cash payment. He did not arrange to have appellant return for a follow-up consultation.

Appellant also called to the stand Dr. David Bearman. On June 7, 2002—well after appellant's arrest—Dr. Bearman saw appellant to determine if he met the criteria for a recommendation for medicinal marijuana under Proposition 215. After giving appellant a physical examination and reviewing

some of appellant's medical records, Dr. Bearman concluded appellant suffered from chronic back pain. Dr. Bearman considered appellant's condition to be serious, qualifying for medicinal marijuana.

Appellant took the stand on his own behalf. He said he was growing the three marijuana plants seized from his mother's yard solely for medicinal use to control back pain. He also said he had suffered from back pain for over 10 years.

Appellant claimed Dr. Eidelman recommended marijuana for treatment and gave him the letter only after the doctor examined him and concluded that appellant suffered from serious, chronic back pain. Only then did appellant begin cultivating marijuana. He claimed he had never grown marijuana prior to the doctor's recommendation. He also said he provided the police with Dr. Eidelman's recommendation after the police seized the plants. Appellant also said Dr. Bearman later examined him and also found his back condition was a serious illness warranting the use of medicinal marijuana.

*Rebuttal*

The San Bernardino County police received information that Dr. Eidelman would sell a medicinal marijuana recommendation "for $250 with no medical condition needed." Police Detective Michael Wirz conducted an undercover operation to investigate the matter. On October 10, 2001, he telephoned Dr. Eidelman to arrange a meeting. Dr. Eidelman told the detective a recommendation would cost $250 to be paid in cash only.

The detective went to Dr. Eidelman's office that same day. He told the doctor he had no medical condition but wanted to buy a marijuana recommendation to keep the police away while he grew his own marijuana. With no further questions, Dr. Eidelman printed a written recommendation. The doctor handed over the certificate and said he needed to list some illness for his records. Detective Wirz again said he smoked marijuana because he liked it, because it made him happy, and because it helped him sleep. Dr. Eidelman then said he would list the detective as suffering from depression for purposes of the recommendation.

The detective then handed Dr. Eidelman $250 in cash. At no time did Dr. Eidelman ask anything about medical history or conduct any kind of examination.

Santa Monica Police Detective Joan Rosario also conducted an undercover investigation of Dr. Eidelman's practice. On August 1, 2001, she telephoned Dr. Eidelman. He said she could come to his office to buy a marijuana

prescription letter for $250 in cash. She went to Dr. Eidelman's office that same day and said she was there to purchase a marijuana prescription. Again, Dr. Eidelman conducted no examination and took no medical history. Again, he simply gave her a recommendation letter and took $250 in return. Again, the detective never complained of any actual illness but simply said she was unable to sleep and suffered from headaches without marijuana.

## I. THE COMPASSIONATE USE INSTRUCTION WAS ERRONEOUS

A. *The Text of the Compassionate Use Act and of the Trial Court's Instruction.*

The Compassionate Use Act of 1996, approved by the electorate in November of that year, states:

"(a) This section shall be known and may be cited as the Compassionate Use Act of 1996.

"(b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows:

"(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

"(B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.

"(C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.

"(2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes.

"(c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

"(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.

"(e) For the purposes of this section, 'primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." (§ 11362.5.)

The instruction given by the court, over appellant's objection, to the jury on appellant's compassionate use defense was as follows:

"A person is not guilty of the unlawful cultivation possession or cultivation of marijuana when the acts of the defendant are authorized by law for compassionate use.

"The burden of proving the defense of compassionate use rests upon the defendant to raise a reasonable doubt as to the case against him.

"The defense of compassionate use is only available to a defendant who proves all of the facts necessary to establish the elements of the defense, namely:

"1. The defendant was seriously ill and suffered from a medical condition where the use of marijuana as a treatment was medically appropriate;

"2. The defendant's use of marijuana was recommended by a physician who had determined orally or in writing that the defendant's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana promotes relief; and

"3. The amount of marijuana possessed or cultivated was reasonably related to the defendant's then current medical needs."

Appellant contends that the essence of the Compassionate Use Act defense is set forth in subdivision (d) of section 11362.5 (that he "cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician") and does not include a requirement that he present evidence that he was "seriously ill." As we shall explain, we agree with appellant.

### B. *Statutory Construction.*

In construing a statute, we ordinarily seek to "ascertain and effectuate legislative intent." (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) When the law is one adopted by the voters, we similarly seek to ascertain and effectuate the intent of the electorate in adopting the law. (*People v. Hernandez* (2003) 30 Cal.4th 835, 865–867 [134 Cal.Rptr.2d 602, 69 P.3d 446]; see also *Keller v. Chowchilla Water Dist.* (2000) 80 Cal.App.4th 1006 [96 Cal.Rptr.2d 246].) Just as with a legislatively enacted statute, we first look to the words of the enactment because the words used are generally the most reliable indicator of the intent of the electorate. (*People v. Hernandez, supra,* at pp. 865–866 [134 Cal.Rptr.2d 602, 69 P.3d 446].) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters)." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Also, " 'a statute must be read and considered as a whole, in order that the true . . . intention may be determined. All the parts of a statute must be construed together, and harmonized, so far as it is possible to do so without doing violence to the language or to the spirit and purpose of the act, so that the statute may stand in its entirety.' " (*People v. Moroney* (1944) 24 Cal.2d 638, 642 [150 P.2d 888]; accord, *In re Bandmann* (1958) 51 Cal.2d 388, 393 [333 P.2d 339].) More simply stated, "[t]he statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme." (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].) Indicia of the intent of the voters in the case of a provision adopted by the voters include "the analyses and arguments contained in the official ballot pamphlet." (*People v. Birkett* (1999) 21 Cal.4th 226, 243 [87 Cal.Rptr.2d 205, 980 P.2d 912]; *People v. Rizo, supra,* 22 Cal.4th at p. 685.) Also, "when language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted." (*In re Tartar* (1959) 52 Cal.2d 250, 256 [339 P.2d 553]; accord, *People v. Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186], and *People v. Rizo, supra,* at pp. 685–686.)

### C. *The Language of the Statute Is Clear.*

Given the above stated rules of statutory construction, certain observations become readily apparent. First, the only reference to "seriously ill" is in the prefatory, or purpose, statement of the act. It is omitted from the heart of the act, that provision set forth in section 11362.5, subdivision (d), as follows: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a

patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

■   Second, although the prefatory language of subdivision (b)(1)(A) of section 11362.5 contains a reference to "seriously ill Californians," that subdivision also contains a list of specified illnesses or conditions for which the medical use of marijuana might be "deemed appropriate" and "recommended by a physician who has determined that the person's health would benefit from the use of marijuana in . . . treatment." (*Ibid.*) The list ends with a catchall phrase "or any other illness for which marijuana provides relief." (*Ibid.*)

■   From the foregoing observations, and bearing in mind that we must construe and harmonize, so far as possible, all parts of a statute (*People v. Moroney, supra,* 24 Cal.2d at p. 642), we conclude that the voters of California did not intend to limit the compassionate use defense to those patients deemed by a jury to be "seriously ill." As is evidenced by the entirety of the language of subdivision (b)(1)(A) and the language of subdivision (d) of section 11362.5, the question of whether the medical use of marijuana is appropriate for a patient's illness is a determination to be made by a physician. A physician's determination on this medical issue is not to be second-guessed by jurors who might not deem the patient's condition to be sufficiently "serious." Our conclusion is further buttressed by subdivision (b)(1)(B) of the statute, which points out that another purpose of the Compassionate Use Act of 1996 was "[t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction." (§ 11362.5, subd. (b)(1)(B).)

We also observe that none of the published opinions addressing the Compassionate Use Act has assumed or suggested that the compassionate use defense includes being "seriously ill" as one of the facts underlying this defense. (See, e.g., *People v. Jones* (2003) 112 Cal.App.4th 341 [4 Cal.Rptr.3d 916]; *People v. Galambos* (2002) 104 Cal.App.4th 1147 [128 Cal.Rptr.2d 844]; *People v. Fisher* (2002) 96 Cal.App.4th 1147 [117 Cal.Rptr.2d 838]; *People v. Bianco* (2001) 93 Cal.App.4th 748 [113 Cal.Rptr.2d 392]; *People v. Young* (2001) 92 Cal.App.4th 229 [111 Cal.Rptr.2d 726]; *People v. Rigo* (1999) 69 Cal.App.4th 409 [81 Cal.Rptr.2d 624]; *People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383 [70 Cal.Rptr.2d 20]; and *People v. Trippet* (1997) 56 Cal.App.4th 1532 [66 Cal.Rptr.2d 559].) The one California Supreme Court decision addressing the Compassionate Use Act, *People v. Mower, supra,* 28 Cal.4th 457, referred to the defense of compassionate use as "the section 11362.5(d) defense" and "the defense provided by section

11362.5(d)." (*Mower, supra,* at pp. 464, 476.) One case, *People v. Tilehkooh* (2003) 113 Cal.App.4th 1433 [7 Cal.Rptr.3d 226], held that a trial court erred in refusing to allow a defendant to present a compassionate use defense at a probation revocation hearing when one of the trial court's reasons for finding the defense inapplicable was that the defendant "was not 'seriously ill.' " (*Id.* at p. 1440.) We note that in *Tilehkooh,* unlike in the present case, "[t]he People [did] not contest defendant's argument . . . that the trial court improperly evaluated the preliminary facts necessary to establish the section 11362.5 defense" (*id.* at p. 1440, fn. 9), but instead raised other, unsuccessful arguments for the inapplicability of section 11362.5 to probation revocation proceedings. Nevertheless, *Tilehkooh* is in accord with our conclusion that being "seriously ill" is not one of the facts underlying the compassionate use defense.

### D. *The Error Was Prejudicial.*

■ The instructional error in this case was clearly prejudicial. The evidence that appellant cultivated the marijuana plants was undisputed. Appellant's defense was entirely based upon the Compassionate Use Act. The prosecutor argued to the jury: "Their case rest [*sic*] upon the believability of the Defendant. Someone that says he is seriously ill, yet has no medical records for 12 to 13 years. Someone that has not been to a doctor for 12 to 13 years. He is unbelievable and their case rest upon his believability." Defense counsel, on the other hand, argued to the jury that appellant was indeed seriously ill: "Now, the Prosecution argues his condition is not serious but do not present any evidence. . . . Did you see any medical testimony from the prosecution? No. They said Mr. Spark's condition was not serious. Why would that be? Why would they not find a doctor? They should be able to find a doctor if his condition is not serious. They should find a doctor that says that. I would argue his condition was serious and they cannot find a doctor that would say it was not serious." Indeed, respondent does not even attempt to persuade us that if there was error, the error was not prejudicial. Respondent's argument, which we reject, is simply that there was no error. Thus regardless of whether the standard of review for this instructional error is whether respondent must "prove beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained" (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; see also *People v. Simon* (1995) 9 Cal.4th 493, 506, fn. 11 [37 Cal.Rptr.2d 278, 886 P.2d 1271]), or whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error" (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), the error requires reversal. (See also *Mower, supra,* 28 Cal.4th at p. 484.)[2]

---

[2] Appellant also takes issue with the third paragraph of the compassionate use defense instruction given to his jury. (See pt. I.A. of this opinion, *ante.*) More particularly, he objects to

## II. THE CONVICTION IS SUPPORTED BY SUBSTANTIAL EVIDENCE[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed.

Buckley, J., and Wiseman, J., concurred.

---

the statement that the defense is available to a defendant who "proves all of the facts necessary to establish the elements of the defense" even though a defendant need not prove the defense by a preponderance of the evidence in order for the defense to be successful. (*Mower, supra,* 28 Cal.4th at p. 484.) Whether this language is so susceptible of misinterpretation as to constitute instructional error is an issue we need not reach here. The instruction was already fatally flawed because, as we have explained, it erroneously included a component that the defendant "was seriously ill."

[*]See footnote, *ante,* page 259.