[No. B196483. Second Dist., Div. Four. July 30, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER THOMAS WINDUS, Defendant and Appellant.

## COUNSEL

Rozanski & Associates and Matthew T. Surlin for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SUZUKAWA, J.**—Christopher Thomas Windus (appellant) appeals from the judgment entered following his plea of no contest to possession of marijuana for sale (Health & Saf. Code, § 11359)[1] and his admission that he had suffered a prior conviction within the meaning of Penal Code sections 1170.12, subdivisions (a) through (d), and 667, subdivisions (b) through (i). He was sentenced to 32 months in state prison. He contends the court erred in denying him the opportunity to present a defense under the Compassionate Use Act of 1996 (CUA; § 11362.5). We reverse the judgment and remand the matter for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The following was presented at appellant's preliminary hearing. On December 14, 2004, Redondo Beach Detective Shawn Freeman and other officers performed a search of appellant's room at the Palos Verdes Inn pursuant to a warrant. They found three plastic bags containing what appeared to be marijuana, loose marijuana, and a pill container with powder which resembled "marijuana or hash." In an interview, appellant told Detective Freeman he used approximately one ounce of marijuana per week for medical reasons. Appellant also showed the detective what appeared to be an expired medical marijuana card. The parties stipulated that the substances found in appellant's room contained 735.2 grams of marijuana, approximately 1.6 pounds. Detective Freeman formed the opinion, based upon his training

---

[1] All further undesignated statutory references are to the Health and Safety Code.

and experience, the amount found, and appellant's statements, that the marijuana was possessed for purposes of sale.

Prior to trial, appellant claimed he was entitled to present a defense under the CUA because he was a qualified patient and a primary caregiver within the meaning of the statute. The People moved to exclude evidence of appellant's defense.

At the Evidence Code section 402 hearing, Dr. William Eidleman testified on appellant's behalf. Appellant had first consulted with him in 1999 for chronic back pain. Appellant consulted with him a second time in September 2001. During both visits, Dr. Eidleman gave him a written recommendation for the medical use of marijuana, but did not specify an amount or dosage. Dr. Eidleman also recommended that appellant be reevaluated annually. Dr. Eidleman's license was suspended by the Medical Board of California from May 2002 to February 2004. At the time of appellant's arrest in December 2004, he had not seen Dr. Eidleman in over three years. Dr. Eidleman saw appellant again in November 2005.

Appellant had told Dr. Eidleman that he ingested marijuana by eating it, which requires four to eight times the amount of marijuana than that needed when smoking it. The doctor testified that if appellant used eight ounces of marijuana per month, it would be "on the high side," but that people who have severe chronic pain do use large amounts, and that three to six pounds would be an appropriate amount for appellant to possess.

Babu Lal also testified on appellant's behalf. Lal was suffering from neuropathy and AIDS and had a doctor's recommendation for medicinal marijuana use, although the recommendation did not specify an amount or dosage. Initially, Lal claimed to have three "care-givers": "two were the Cannabis Club, itself" and appellant was the third. The club sold him four ounces of marijuana a month. Appellant supplied him with a pound of marijuana each month from 2000 or 2001 until the time of appellant's arrest. Appellant did not charge him for the marijuana. Lal later testified that he had four other caregivers in addition to appellant: his aunt; a minister named Alex; Steven, who assisted him at home by preparing meals and ensuring that Lal took his medication; and Derrick, who washed his clothes and assisted him with general hygiene. Appellant's only job was to make sure that Lal had his medicine, but appellant had occasionally driven Lal to Lal's mother's or aunt's home. Lal believed appellant lived in Los Angeles or in Oregon. Appellant would provide Lal with money and marijuana whenever appellant was in San Francisco where Lal resides.

The trial court ruled that appellant could not present a CUA defense to the jury. It stated: "[L]et me first reiterate the findings that I made preliminarily, earlier in this proceeding, and that was, first, that [appellant] is a qualified patient, that he did suffer from a severe medical condition, that he did consult a licensed physician for the purpose of obtaining treatment for that condition, and that licensed physician did recommend or approve the use of marijuana for the purpose of treating that condition. However, that particular physician did not make a recommendation, nor did any other physician make a recommendation that [appellant] possess more than eight ounces of marijuana at any one time for that purpose." "From Mr. Lal's testimony, it appears that [appellant] did not on an always or consistent basis provide food, clothing, or shelter; did not provide any other medication; did not provide transportation; was not immediately available to otherwise provide support services. Apart from [appellant] supplying the marijuana once a month or thereabouts, from time to time, he supplied transportation or money, if he was in town. Although [appellant] perhaps was compassionate towards Mr. Lal, . . . I cannot say that I am able to find as a preliminary fact [appellant] was acting in the capacity of primary care-giver, as that term is defined in the Health and Safety Code. That being the case, there will not be evidence permitted that the [appellant] was acting in that capacity and in turn, then, there will not be evidence by the [appellant] that the amount that he possessed was reasonably related to his own needs or the needs of any other person. . . . [T]his is, perhaps, a case of first impression and the court is aware that, having now excluded this evidence, that it's very likely that, should the matter proceed to trial, [appellant] would, of course, be convicted," and that if appellant "was now prepared to enter a guilty plea so that he would be able to have this matter heard by a higher court, the court would be inclined, first following pronouncement of judgment of sentence, to grant bail on appeal; and, second, to issue a certificate of probable cause."

Appellant entered a plea of no contest and admitted his prior strike allegation pursuant to the terms stated by the trial court regarding his right to appeal. After his petition for a writ of mandate was denied, appellant filed a motion to withdraw his plea, which the trial court denied. He filed a notice of appeal and the trial court issued a certificate of probable cause.

## DISCUSSION

### I. *The Qualified Patient Defense*

The CUA, codified in section 11362.5, was added by the passage of Proposition 215 in 1996. "By its terms, section 11362.5 [subdivision] (d) provides that sections 11357 and 11358, which criminalize the possession and cultivation of marijuana, 'shall not apply to a patient, or . . . a patient's primary

caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.' " (*People v. Mower* (2002) 28 Cal.4th 457, 470–471 [122 Cal.Rptr.2d 326, 49 P.3d 1067], fn. omitted.) The CUA does not limit the amount of marijuana one may possess or cultivate in order to come within the purview of the statute, as long as the drug is possessed or cultivated for "the personal medical purposes of the patient." (§ 11362.5, subd. (d).)

In 2003, the Legislature enacted the Medical Marijuana Program (MMP) to "[c]larify the scope of the application of the [CUA]," "[p]romote uniform and consistent application of the act," "[e]nhance the access of patients and caregivers to medical marijuana," and "address additional issues that were not included within the act." (Stats. 2003, ch. 875, § 1.)

■ Unlike the CUA, the MMP sets a limit on the amount of marijuana a qualified patient or primary caregiver may possess. Section 11362.77 provides that a qualified patient or primary caregiver may not possess more than eight ounces of dried marijuana or more than six mature or 12 immature marijuana plants unless he or she has a doctor's recommendation that this quantity does not meet the patient's medical needs. (§ 11362.77, subds. (a), (b).)

Appellant contends the trial court erred when it relied on section 11362.77, subdivision (a) and ruled he was required to present evidence that, prior to his arrest, he had received a recommendation from a doctor approving the possession of more than eight ounces of marijuana. He argues that "[i]f § 11362.77 had been intended to be a limitation on § 11362.5, the latter having been passed by popular initiative, the Legislature would not have the power to impose the limitation." He also claims Dr. Eidleman provided sufficient evidence that the amount appellant possessed was consistent with his medical needs for the purpose of presenting a CUA defense to the jury. We agree with the latter contention.[2]

The Attorney General's principal argument is that Dr. Eidleman did not recommend *prior* to appellant's arrest in December 2004 that a specific amount of marijuana was necessary to meet appellant's medical needs. He

---

[2] Recently, this appellate district's Division Three held the MMP amended the CUA and violated the provision set forth in article II, section 10, subdivision (c) of the California Constitution that bars the Legislature from amending an initiative statute unless the initiative grants it the authority to do so. (*People v. Kelly* (2008) 163 Cal.App.4th 124 [77 Cal.Rptr.3d 390].) We resolve the case without addressing the constitutionality of the MMP.

points out Dr. Eidleman did not see appellant from September 2001 until November 2005, approximately 11 months after appellant's arrest. He contends that the doctor advised appellant, in 2001, to come in for yearly reevaluations. Thus, because Dr. Eidleman's recommendation was more than three years old, it "had clearly expired." The Attorney General argues, "it was only at the hearing in January 2006 that the doctor testified appellant's condition appropriately called for possession of three to six pounds. Thus, appellant did not present any evidence regarding the amount of marijuana he required to satisfy his medical need in December 2004, when he was arrested." We disagree with the Attorney General's analysis.

■ Based on our examination of the CUA, we see nothing in the statute that requires a patient to periodically renew a doctor's recommendation regarding medical marijuana use. The statute does not provide, as the Attorney General asserts, that a recommendation "expires" after a certain period of time. As for Dr. Eidleman's suggestion that appellant see him annually, there was no evidence appellant's failure to do so invalidated the doctor's medical marijuana recommendation. Moreover, the evidence appellant presented was sufficient to present to the jury the question whether the marijuana he possessed was for his personal medical needs.

■ As we have discussed, Dr. Eidleman saw appellant in 1999, 2001, and 2005. He testified that "[b]ased on having seen [appellant] in 2005 and 2001, [and] in 1999, I believe his condition in 2004 was the same, which was he had severe chronic pain." The doctor noted appellant claimed to be eating marijuana instead of smoking it, which meant appellant had to possess a larger quantity of the drug. One who ate marijuana would need four to eight times as much as one who smoked it to get the same effect. Thus, Dr. Eidleman opined that three to six pounds of marijuana was sufficient to meet appellant's medical needs. Where, as here, the accused possesses marijuana and has a physician's recommendation that he use the drug to treat an ailment set forth in the CUA, he is entitled to present a CUA defense to the jury. (See *People v. Jones* (2003) 112 Cal.App.4th 341, 350 [4 Cal.Rptr.3d 916] ["Because defendant's testimony was sufficient to raise a reasonable doubt over the fact of the physician's approval, the trial court erred in barring defendant from presenting his Compassionate Use Act defense to the jury."].)

The Attorney General cites *People v. Rigo* (1999) 69 Cal.App.4th 409 [81 Cal.Rptr.2d 624] (*Rigo*) and argues Dr. Eidleman's postarrest opinion regarding appellant's medical need for a specific amount of marijuana was insufficient to allow a CUA defense. His argument is misplaced.

In *Rigo*, the defendant was arrested in November 1996. Three and a half months later, in February 1997, he consulted with a doctor, who provided a medical recommendation for the use of marijuana. Defendant had not sought such an approval from a doctor at any time prior to his arrest. (*Rigo, supra*, 69 Cal.App.4th at pp. 411, 413.) The court held that postarrest approval is insufficient to allow a CUA defense to be presented. It concluded, "To allow self-medication in the context of this case would improperly promote non-medically supervised use of marijuana for a variety of subjectively held reasons which would frustrate the intent of the voters in enacting Proposition 215." (69 Cal.App.4th at p. 414.)

Unlike the defendant in *Rigo*, appellant had seen Dr. Eidleman twice prior to his December 2004 arrest. On each occasion, the doctor recommended that appellant use marijuana to treat his chronic back pain. Thus, this is not a case where appellant self-medicated without obtaining medical approval and then attempted to justify his possession of marijuana only after his arrest.

■ Although the trial court believed that appellant's medical recommendation had to specify the amount appellant required for his medical needs, nothing in the CUA (or, for that matter, the MMP) or case law supports that view. The CUA defense requires only that one possess or cultivate marijuana for his or her personal medical purposes pursuant to a recommendation or approval from a doctor. (See *People v. Spark* (2004) 121 Cal.App.4th 259, 266 [16 Cal.Rptr.3d 840].) The Attorney General cites no case that holds a doctor's recommendation must approve the patient's use of a specific amount of marijuana in order for the patient to present a CUA defense. Indeed, an examination of recent cases suggests that there is no such requirement.

The facts in *People v. Wright* (2006) 40 Cal.4th 81 [51 Cal.Rptr.3d 80, 146 P.3d 531] are strikingly similar to ours, no doubt because, as in this case, Dr. Eidleman was the doctor who provided the medical marijuana recommendation. In *Wright*, the doctor recommended medical use of marijuana to the defendant in June 2001, but, as here, did not discuss a specific dosage. In September 2001, the defendant was arrested for possessing marijuana for sale and transporting marijuana. In November 2001, Dr. Eidleman saw the defendant again and wrote a letter approving the defendant's use of a pound of marijuana every two to three months. (*Id.* at pp. 85–87.)

The Attorney General argued that the CUA defense was not available to the defendant because he possessed more than the eight ounces allowed under section 11362.77, subdivision (a). The court noted section 11362.77, subdivision (b) provides that a qualified patient may possess a greater amount

pursuant to a doctor's recommendation. The court then cited Dr. Eidleman's *testimony at trial* that the amount in the defendant's possession was appropriate in light of his medical needs, concluded the defendant was entitled to assert the CUA defense, and discussed the instructions presented to the jury. (*People v. Wright, supra*, 40 Cal.4th at p. 97.)

██ The reason appellant may present a CUA defense despite the fact that his medical recommendation does not specify the amount he may possess is simple. It is not up to the patient's doctor to determine, for the purposes of the CUA, whether the quantity possessed by the patient is reasonably related to the patient's current medical needs. The court in *People v. Trippet* (1997) 56 Cal.App.4th 1532 [66 Cal.Rptr.2d 559] discussed the significance of a medical recommendation to use marijuana. "However, we are not remotely suggesting that, even with a physician's 'recommendation or approval,' a patient may possess an unlimited quantity of marijuana." (*Id.* at p. 1549.) "The rule should be that the quantity possessed by the patient or the primary caregiver, and the form and manner in which it is possessed, should be reasonably related to the patient's current medical needs. What precisely are the 'patient's current medical needs' must, of course, remain a factual question to be determined by the trier of fact." (*Ibid.*; accord, *People v. Frazier* (2005) 128 Cal.App.4th 807, 824 [27 Cal.Rptr.3d 336] [the jury determines whether the amount of marijuana possessed by a defendant is reasonably related to his or her current medical needs].)

██ We glean the following from the relevant cases. In order to present a CUA defense to the jury, a defendant must have obtained a recommendation to use medical marijuana prior to his or her arrest. However, that recommendation need not specify an approved dosage or amount of marijuana that may be possessed. A doctor's opinion that the amount in the defendant's possession meets his or her personal medical needs may be proffered at trial.

██ At the Evidence Code section 402 hearing, appellant established he had the requisite medical recommendation prior to his arrest and his doctor opined that the pound and a half of marijuana appellant possessed was an amount commensurate with his personal medical needs. As a result, the trial court should have allowed appellant, as a qualified patient, to present his CUA defense to the jury.

## II. *The Primary Caregiver Defense*

Appellant contends he also qualifies as a primary caregiver within the meaning of the CUA. He asserts the trial court applied the wrong standard when it determined that a primary caregiver was one who always assumed responsibility for the needs of the patient. He claims that the statute merely

requires that he provide assistance when needed. In evaluating appellant's position, we focus on the nature of the services he provided, not the frequency with which he provided them.

Section 11362.5, subdivision (e) defines a "primary caregiver" as "the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." Under any standard, appellant did not meet this requirement.

According to Lal, although on occasion appellant drove for him and gave him money, his only job was to provide Lal with his "medicine" or marijuana. Appellant's responsibilities to Lal required him, at most, to make monthly excursions to San Francisco, and Lal testified that appellant did not come every month. Others were responsible for Lal's day-to-day needs. His aunt provided him shelter, Steven helped Lal at home when he did not feel well by making meals and ensuring that he took his medication, Lal's minister took him to his appointments, and Derrick washed Lal's clothes and assisted with general hygiene.

■ Case law is clear that one who merely supplies a patient with marijuana has no defense under the CUA. (*People v. Mower, supra*, 28 Cal.4th at p. 475 [defendant who claimed he cultivated 31 marijuana plants for himself and two others did not qualify as a primary caregiver]; *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 773 [33 Cal.Rptr.3d 859] [trial court did not err in concluding the CUA defense was not available to one who helped others obtain medicinal marijuana]; *People v. Galambos* (2002) 104 Cal.App.4th 1147, 1152 [128 Cal.Rptr.2d 844] ["We also reject defendant's claim that the limited immunity afforded under Proposition 215 to patients and primary caregivers should be extended to those who supply marijuana to them."].)

The evidence is undisputed that appellant assumed responsibility for Lal's need for marijuana and nothing more. The court correctly barred appellant from presenting a CUA defense on the theory that he was a primary caregiver.

III. *Further Proceedings in the Trial Court*

Appellant's plea bargain provided that if the trial court's order was not upheld on appeal, he would be given the opportunity to withdraw his plea. Upon remand, if appellant still wishes to withdraw his plea, the court must grant his motion and set the matter for trial.

## DISPOSITION

The judgment is reversed. The matter is remanded for the trial court to conduct further proceedings consistent with this opinion.

Epstein, P. J., and Willhite, J., concurred.