Filed 5/8/13  P. v. Nivison CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071145 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F00948) |
| v. | |
| RONALD CLAIRE NIVISON, | |
| Defendant and Appellant. | |

Twenty-six-year-old Ronald Nivison's sole defense at his trial for possession of six and one-half pounds of marijuana for sale was that he grew and packaged it for medicinal purposes for himself and his father, both of whom had medical marijuana identification cards, and he had no intent to sell it.  On appeal, he contends the trial court, as well as his own lawyer, wrongly concluded that the Medical Marijuana Program (Health & Saf. Code, § 11362.7 et seq.) did not provide a defense to possession for sale.  Thus, he contends the jury was not properly instructed, he was denied his constitutional right to competent counsel, and he is entitled to a reversal.  We disagree and affirm the judgment.

1

**FACTS**

In February 2012 defendant was on probation for commercial (second degree) burglary and unemployed. He testified he smoked about 10 joints of marijuana a day to mitigate his chronic back and elbow pain, migraine headaches, and insomnia. Without a job, he could not afford to buy his marijuana, so he had planted 12 marijuana plants in the spring of 2011 and began harvesting the ones that survived later that fall; he "pulled the last plant out of the ground" in December. He lived in a small trailer parked in his father's backyard.

A deputy sheriff conducted a probation search of the trailer on February 2, 2012. He found a plastic Tupperware storage tub containing approximately 1,300 grams of marijuana, and 19 bags of marijuana, some of which were "Ziplock" bags, some of which were "biohazard" bags, and some of which were garbage-type bags. Some of the bags were labeled with the strain of marijuana they contained. Others were labeled with quantities that are typically sold on the street, but the actual weight of the marijuana did not correspond to the labels. The total weight of all the marijuana inside the trailer was 2,950.85 grams, or approximately six and one-half pounds.

The deputy also found tare weights used for calibrating a scale, along with all of the packaging materials. In the bathroom located two or three steps from the packaging area, he confiscated a shotgun and a rifle, both loaded. He opined that based on the volume of marijuana, coupled with the tare weights, packaging, and guns, defendant possessed the marijuana primarily for sale.

The deputy did not find any of the other accoutrements typical of a sales operation, such as a cell phone, scale, pay-owe sheets, or cash. There had been no reports of foot traffic to and from the trailer. Nevertheless, he explained to the jury that the marijuana, like lettuce or broccoli, would degrade over time. The marijuana he found in the trailer would have lasted only four to six months because of the way in which it was packaged.

The prosecutor played two tape recordings of defendant talking to his girlfriend and to an unidentified male during jail visits. In the first, defendant asked his girlfriend to tell his father to upgrade his "prop 215" card to allow him to have more than eight ounces of marijuana in his possession. In the second, he maligned the state of California for paying half of the cost of medical marijuana through Medi-Cal. Laughing, he declared that when he was released he was going to get "so fucking stoned it ain't even gonna be funny man."

But defendant told the jury he did not intend to sell the marijuana he cultivated. He grew what he hoped would last a year. The deputy sheriff testified that an average user smokes between 6 and 8 grams of marijuana a day. If one individual were to consume 8 grams of marijuana a day, the marijuana found in the trailer would last for 368.8 days. But defendant testified that he planned to share it with his father.

Defendant also explained the presence of the tare weights and the biohazard baggies. On occasion, he purchased the contents of storage units, and in one of the units he found the tare weights he later used to weigh down the branches of his marijuana plants. He obtained the biohazard, or "medical," bags from a house he was employed to clean out.

The jury found defendant guilty of possession of marijuana for sale while armed with a firearm. (Health & Saf. Code, § 11359; Pen. Code, § 12022, subd. (a)(1).) Defendant appeals.

**DISCUSSION**

The Compassionate Use Act of 1996 (Act; Health & Saf. Code, § 11362.5), adopted by the voters as a state initiative, is narrowly drafted and did not "decriminalize marijuana on a wholesale basis." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 772-773 (*Urziceanu*).) The purposes of the Act are: "(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has

3

determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief. [¶] (B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction." (Health & Saf. Code, § 11362.5, subd. (b)(1).) The Act did not provide a defense to possession of marijuana for sale. (*People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1389.)

The Legislature, however, sought to clarify the scope of the Act and to promote the uniform and consistent application of it by enacting the Medical Marijuana Program Act (Program). (Health & Saf. Code, § 11362.7 et seq.) Contrary to the position he took at trial, defendant now contends it is this legislation, not the Act, that provides a defense to possession for sale. We need not determine the scope or applicability of any potential defense under the Program because defendant's sole defense would have been at odds with the defense he concocts for purposes of appeal.

The defense was simple and straightforward—he did not intend to sell the marijuana in his possession. He testified he grew and harvested the marijuana plants for medicinal purposes only for himself and for his father. Thus, he hoped the jury would find he did not entertain the requisite intent to support a possession-for-sale charge.

To the extent the Program expands the protections provided by the Act to additional crimes, including possession for sale, it is only to qualified patients or to primary caregivers. (Health & Saf. Code, §§ 11362.765, 11362.775.) Defendant did not testify that he intended to sell the marijuana to other qualified patients or to their primary caregivers. Indeed, such a suggestion would be inconsistent with his defense that he possessed it exclusively for himself and his father. There is absolutely no evidence in this record that he intended to sell it to the narrow class of people sanctioned under the Program. (Health & Saf. Code, § 11362.765, subd. (c).) Nor was there any evidence

4

defendant was associating with others in order to collectively or cooperatively cultivate marijuana for medical purposes. (Health & Saf. Code, § 11362.775.) At oral argument, defendant's counsel disavowed any intent to argue that the Act or Program created a defense to possession for sale. Rather, his argument is that both acts accommodated defendant's trial defense that possession of a relatively large quantity of marijuana did not preclude a finding that the possession was permitted for the medical needs of him and his father and did not constitute possession for sale; the trial court erred in not instructing the jury to this effect. No such instruction was requested, nor was it required. And contrary to counsel's claim at argument, none of the instructions given impaired counsel's ability to argue, as he did, that the marijuana was not possessed for sale.

" 'It is well settled that a defendant has a right to have the trial court . . . give a jury instruction on any affirmative defense for which the record contains substantial evidence [citation]—evidence sufficient for a reasonable jury to find in favor of the defendant [citation]—unless the defense is inconsistent with the defendant's theory of the case [citation]. In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether "there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt . . . ." [Citations.]' (*People v. Salas* (2006) 37 Cal.4th 967, 982-983 . . . .)" (*People v. Mentch* (2008) 45 Cal.4th 274, 288 (*Mentch*).)

Thus, defendant's argument on appeal fails not because the law proscribes a defense but because the evidence does not support a jury instruction and it would be inconsistent with defendant's defense that he was in possession of the marijuana not to sell it, but to use it to relieve his pain and suffering. Although the cases he cites may support a hypothetical defense based on different evidence, they do not trigger a duty to instruct on evidence that is not there. (*Mentch*, *supra*, 45 Cal.4th 274; *People v. Windus* (2008) 165 Cal.App.4th 634; *Urziceanu*, *supra*, 132 Cal.App.4th 747.) The court did not err by failing to instruct the jury sua sponte, and defendant's lawyer was not incompetent.

5

Defendant produced a viable defense, but the jury rejected it.  He cannot change theories on appeal to get a second bite at the apple.

## DISPOSITION

The judgment is affirmed.


        RAYE        , P. J.


We concur:


    NICHOLSON    , J.


    HULL        , J.